UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at CHATTANOOGA

| | |
|---|---|
| GREGORY PAYNE, ) <br> ) <br> Petitioner, ) <br> ) <br> v. ) <br> ) <br> UNITED STATES OF AMERICA, ) <br> ) <br> Respondent. ) | No. 1:04-CV-250 <br><br> Chief Judge Curtis L. Collier |

## **MEMORANDUM**

This matter comes before the Court on the motion of *pro se* petitioner Gregory Payne ("Petitioner") to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 (Court File No. 1, "Petition"). Petitioner filed a memorandum in support of his Petition (Court File No. 2). Pursuant to the Court's Order (Court File No. 3), the United States filed a response to Petitioner's motion (Court File No. 5, "Government's Response"). The Court finds the materials thus submitted, together with the complete record of the underlying criminal case,[1] conclusively show Petitioner is not entitled to relief on the claims asserted in his Petition. Accordingly, the Court will decide those matters without an evidentiary hearing, *see United States v. Todaro*, 982 F.2d 1025, 1028 (6th Cir.), *cert. denied*, 508 U.S. 943, 113 S. Ct. 2423, 124 L. Ed. 2d 644 (1993), and will **DENY** Petitioner's motion for the following reasons.

---

[1]In accordance with Rule 4(b) of the Rules Governing Section 2255 Proceedings, the Court has considered all of the pleadings and filings in Petitioners § 2255 motion, which will be cited by the Court File Number assigned to the particular pleading or motion (*e.g.*, "Court File No. 1"), and all the files, records, transcripts, and correspondence relating to Petitioner's conviction in Criminal Docket No. 1:03-CR-47, which will be referred to by the Court File Number assigned to the particular matter in the underlying criminal case (*e.g.*, "Crim. Court File No. 1").

## I. FACTUAL AND PROCEDURAL BACKGROUND

On February 12, 2003, a three-count indictment was returned by a federal grand jury sitting in the Eastern District of Tennessee at Chattanooga (Crim. Court File No. 2). Count One of the indictment charged Petitioner with attempt to manufacture methamphetamine, in violation of 21 U.S.C. §§ 841(b)(1)(C) and 846; Count Two charged Petitioner with possession of materials to be used to manufacture of methamphetamine, in violation of 21 U.S.C. §§ 843(a)(6) and 843 (d)(2); and Count Three charged Petitioner with knowingly possessing a firearm in furtherance of a drug trafficking offense, in violation of 18 U.S.C. § 924(c) (*Id.*).

At the initial appearance, attorney Anthony Martinez was appointed to represent Petitioner. Petitioner was represented by Mr. Martinez from the arraignment through sentencing. On April 8, 2003, the United States filed a notice of intent to use prior convictions to impeach and to enhance punishment pursuant to 21 U.S.C. §§ 841 and 851 (Crim. Court File No. 7). Shortly thereafter, on May 16, 2003, Petitioner filed a notice of intent to enter a guilty plea (Crim. Court File No. 11). There was no written plea agreement in this case; however, on May 21, 2003, the United States filed a factual basis in support of the guilty plea. The factual basis filed in support of petitioner's plea of guilty states the facts as follows:

> On February 5, 2003, a police officer shopping at the Wal-Mart in Rhea County, in the Eastern District of Tennessee, walked by Gregory Payne and noticed a very strong chemical odor about Payne. The officer knew this was the odor produced when methamphetamine is manufactured. Other officers followed Payne and discovered he was driving on a suspended license. After officers stopped Payne's car, officers acquired a consent to search Payne's Rhea County residence.
>
> There was a very strong, chemical odor in the residence, and officers had to ventilate the residence. This chemical odor is the odor which comes from the production of methamphetamine. Inside the residence officers found a methamphetamine lab. Many of the components of the lab were found in the bathroom where two infants had recently been bathed. Inside the bathroom officers found a blue garbage can

2

> containing a stained hose, muriatic acid, a coffee pot containing a multi-layered liquid, and a trash can containing waste from a cook. Officers also found a small quantity of finished methamphetamine. On a shelf in the bathroom was a loaded, double-barrel pistol.

(Crim. Court File No.12).

On May 22, 2003, Petitioner entered a guilty plea (Crim. Court File No.13). In accordance with Fed. R. Crim. P. 11 and the Court's standard practice, Petitioner was placed under oath (Crim. Court File No. 19, Rearraignment Transcript at p. 2). At the beginning of the guilty plea hearing, the Court asked Petitioner whether he had sufficient time to discuss his case with Mr. Martinez and whether he was satisfied with Mr. Martinez's representation. Petitioner answered both questions affirmatively (*Id.* at 3). He further affirmed he was satisfied with his attorney's representation and he was neither threatened nor forced by anyone in anyway to plead guilty (*Id.* at 3-4). Next, the Court advised Petitioner of the rights he would be giving up by entering a guilty plea, read Counts One, Two and Three, and explained the elements of each crime (*Id.* at 3-6). Petitioner affirmatively indicated he understood all three charges to which he was pleading guilty and the elements of each offense (*Id.* at 5-6).

Further, Petitioner indicated he still wished to plead guilty after the Government outlined the statutory sentencing range for each offense and he stated he understood his sentence would be determined in accordance with the applicable sentencing guidelines (*Id.* at 6-8). The Court asked Petitioner if he recognized the document entitled "Factual Basis" to which Petitioner stated "Yes, Sir" (*Id.* at 9). Petitioner stated the factual basis was true and correct (*Id.*). Petitioner also stated there was nothing in the factual basis which was not true insofar as he knew (*Id.*). Petitioner agreed he was pleading guilty because he was in fact guilty of the crimes (*Id.* at 10).

3

The Presentence Investigation Report ("PSR") was prepared and provided to the parties on July 3, 2003. The relevant portion of the Offense Conduct reads:

> As the officers entered the defendant's home, there was a very strong chemical odor inside. The officers had to ventilate the house. The police located a methamphetamine laboratory inside the residence. Many of the components of the lab were found in the bathroom where two infants had just been bathed. Inside the bathroom, officers found a blue garbage bag containing a stained hose, muriatic acid, a coffee pot containing 42.8 grams of a multi-layered liquid, and a trash can containing waste from a methamphetamine cook. Officers also found a small quantity of finished methamphetamine (0.3 grams) and a loaded pistol.

(PSR at ¶ 8). The probation officer determined Petitioner should be held responsible for .3 grams of methamphetamine, resulting in a base offense level of 12 for the offenses in Counts One and Two (*Id.* at ¶¶ 9, 13, 14). The base level was adjusted to 30 pursuant to United States Sentencing Guidelines ("USSG") § 2D1.1(b)(5)(C)[2] as the offense involved the manufacture of methamphetamine with a substantial risk of harm to a minor (*Id.* at ¶¶ 25, 29). With a two-level decrease for acceptance of responsibility pursuant to § 3E1.1(a) and an additional decrease of one level pursuant to § 3E1.1(b), Petitioner's offense level was determined to be 27 (*Id.* at ¶ 31). Based on a total offense level of 27 and a criminal history category of I, the Guideline range for imprisonment was 70 to 87 months for Counts One and Two. Pursuant to USSG § 2K2.4(b), the term of imprisonment for Count Three was not less than five years (60 months) to run consecutive to any other term of imprisonment. As a result, the effective guideline range was 130 to 147 months (*Id.* ¶¶ 35, 55).

Petitioner objected to the enhancement for substantial risk of harm to a minor (PSR

---

[2] "If the offense (i) involved the manufacture of amphetamine or methamphetamine; and (ii) created a substantial risk of harm to the life of a minor or an incompetent, increase by **6** levels. If the resulting offense level is less than level **30**, increase to level **30**." USSG § 2D1.1(b)(5)(C)(emphasis in original).

4

Addendum). After the Court heard argument of counsel, the Court held the Government did not meet the burden of proof by a preponderance of the evidence the offense of manufacturing methamphetamine created a substantial risk of harm to the life of a minor pursuant to USSG § 2D1.1(b)(5)(C). The Court granted Petitioner's objection to the application of that section, significantly reducing Petitioner's base offense level to 12 for Count One (Crim. Court File No. 20, Sentencing Hrg. TR at 25-26). As noted in paragraph 30 of the PSR, Counts One and Two were grouped under § 3D1.2(d). Accordingly, the offense level of Count Two, which was 14, was used to calculate the adjusted offense level. Given the two-level reduction pursuant to USSG § 3E1.1(a) for acceptance of responsibility, the adjusted offense level was 12. Since the offense level was less than 16, Petitioner was not entitled to an additional one-level reduction under USSG § 3E1.1(b).

The Court sentenced Petitioner to the custody of the Bureau of Prisons for a period of 76 months. The sentence consisted of terms of 16 months each for Counts One and Two to run concurrently, a term of 60 months on Count Three to run consecutive to Counts One and Two, three years supervised release, and an assessment in the amount of $300.00 (*Id.* at 28). Judgment was issued by the Court on August 26, 2003 (Crim. Court File No. 15, Judgment). The Court adopted the factual findings and Guideline application in the PSR except the inclusion of the upward enhancement for substantial risk of harm to a minor. This resulted in a change to the following paragraphs: ¶ 16 to zero; ¶ 20 to 12; ¶ 25 to zero; ¶ 29 to 14; ¶ 29 to 14; ¶ 31 to (-2); ¶ 32 to 12; ¶ 34 to 12 and ¶ 55 to 12 (*Id.*, Statement of Reasons). Petitioner did not appeal his conviction or sentence.

On August 16, 2004, Petitioner timely filed the present motion to vacate, set aside, or correct his conviction pursuant to 28 U.S.C. § 2255. Petitioner now raises two claims of ineffective

5

Case 1:04-cv-00250   Document 6   Filed 05/23/06   Page 5 of 14   PageID #: 44

assistance of counsel attacking the judgment in his case (Court File Nos. 1, 2). For the following reasons, these claims provide no basis to grant his Petition.

## II.  STANDARD OF REVIEW

Section 2255 of Title 28 of the United States Code permits a prisoner in custody under sentence of a federal court to move the court which imposed the sentence to vacate, correct, or set aside that sentence, on the grounds:

> the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack . . . .

28 U.S.C. § 2255. This Court has jurisdiction under 28 U.S.C. § 1331. Petitioner has the burden of establishing any claim asserted in the petition. *See Bowers v. Battles,* 568 F.2d 1, 5 (6th Cir. 1977); *Mayes v. United States,* 93 F. Supp. 2d 882, 886 (E.D. Tenn. 2000).

Where a constitutional error is alleged, in order to obtain relief under § 2255 the record must reflect a constitutional error of such magnitude it had a substantial and injurious effect or influence on the proceedings. *See Brecht v. Abrahamson*, 507 U.S. 619, 637-38, 113 S. Ct. 1710, 1721-22, 123 L. Ed. 2d 353 (1993); *Watson v. United States*, 165 F.3d 486, 488 (6th Cir. 1999). In order to prevail on a § 2255 motion alleging non-constitutional error, a petitioner must show a "fundamental defect in the proceedings which necessarily results in a complete miscarriage of justice or an egregious error violative of due process." *Riggs v. United States*, 209 F.3d 828, 831 (6th Cir.), *cert. denied*, 531 U.S. 884, 121 S. Ct. 200, 148 L. Ed. 2d 140 (2000); *Gall v. United States*, 21 F.3d 107, 109 (6th Cir. 1994). Thus, "[a] motion brought under § 2255 must allege one of three bases as a threshold standard: (1) an error of constitutional magnitude; (2) a sentence imposed outside the

statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid." *Weinberger v. United States*, 268 F.3d 346, 351 (6th Cir. 2001).

Petitioner's two claims rest on allegations of ineffective assistance of counsel. The Sixth Amendment provides, in pertinent part, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." U.S. Const. amend. VI. A defendant has a Sixth Amendment right not just to counsel, but to "reasonably effective assistance" of counsel. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064, 80 L. Ed. 2d 674 (1984). In *Strickland*, the Supreme Court set forth a two-pronged test for evaluating claims of ineffective assistance of counsel:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable.

466 U.S. at 687, 104 S. Ct. at 2064. As with any other claim under § 2255, the burden of proving ineffective assistance of counsel is on the petitioner. *Virgin Islands v. Nicholas*, 759 F.2d 1073, 1081 (3d Cir. 1985).

In considering the first prong of the test set forth in *Strickland*, the appropriate measure of attorney performance is "reasonableness under prevailing professional norms." *Strickland*, 466 U.S. at 688, 104 S. Ct. at 2065. A defendant asserting a claim of ineffective assistance of counsel must "identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Id*. at 690, 104 S. Ct. at 2066. The evaluation of the objective reasonableness of counsel's performance must be made "from counsel's perspective at the time of

7

the alleged error and in light of all the circumstances, and the standard of review is highly deferential." *Kimmelman v. Morrison*, 477 U.S. 365, 381, 106 S. Ct. 2574, 2586, 91 L. Ed. 2d 305 (1986).

The second prong of the *Strickland* test requires the petitioner show counsel's deficient performance prejudiced the defense. Thus, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Strickland,* 466 U.S. at 691, 104 S. Ct. at 2066. The petitioner must show "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694, 104 S. Ct. at 2068. The *Strickland* Court emphasized both prongs must be established in order to meet the claimant's burden, and if either prong is not satisfied the claim must be rejected, stating:

> Although we have discussed the performance component of an ineffectiveness claim prior to the prejudice component, there is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one . . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed. Courts should strive to ensure that ineffectiveness claims not become so burdensome to defense counsel that the entire criminal justice system suffers as a result.

*Id*. at 697, 104 S. Ct. at 2069.

### III. **DISCUSSION**

Petitioner asserts two grounds upon which he argues the Court should vacate, set aside, or correct his sentence. Petitioner contends he was denied effective assistance of counsel when his attorney: (1) did not argue Petitioner was entitled to a three-level downward adjustment for

8

acceptance of responsibility pursuant to USSG § 3E1.1; and (2) did not require the Government to prove the firearm seized from his residence belonged to him.

### A. Ineffective Assistance of Counsel - USSG § 3E1.1

Petitioner first argues he was entitled to a three-level downward adjustment for acceptance of responsibility pursuant to USSG § 3E1.1. As discussed above, Petitioner received a two-level downward adjustment under USSG § 3E1.1(a). To be entitled to an additional decrease of one level under USSG § 3E1.1(b), Petitioner's offense level after the operation of USSG § 3E1.1(a) had to be 16 or greater. As his offense level after the operation of USSG § 3E1.1(a) was 12, Petitioner was not entitled to the additional one-level decrease under USSG § 3E1.1(b). Petitioner's claim on this ground is without merit. Mr. Martinez was not deficient in failing to raise this claim, nor was Petitioner prejudiced by its omission. Accordingly, the Court will **DENY** Petitioner's claim for relief on this ground.

### B. Ineffective Assistance of Counsel - 18 U.S.C. § 924(c) Gun Possession

Petitioner next argues Mr. Martinez was ineffective because he did not require the Government to prove the firearm seized from Petitioner's residence belonged to Petitioner. Petitioner now claims "at no time [did he ever possess] said handgun or had no knowledge of its very existence" (Court File No. 2 at 8). Petitioner claims there was no evidence the handgun belonged to him, his "fingerprints were never found on said gun," and there was no evidence the gun was ever used in the commission of the offense. Petitioner further claims "if [he] would not have been misled by the rerroneous (sic) advice of the counsel [Petitioner] certainly would not have plead guilty . . . " to Count Three of the Indictment (Court File No. 2 at 9).

As the Court outlined during Petitioner's guilty plea, the two elements to prove possession

9

of a firearm in furtherance of a drug trafficking offense are: (1) Petitioner committed the drug offense charged in Count One of the Indictment and (2) in furtherance of the commission of that drug offense, Petitioner knowingly possessed a firearm (Court File No. 19 at 6). In regard to the first element, Petitioner pleaded guilty to the drug trafficking offense charged in Count One in the Indictment.

During rearraignment and sentencing, Petitioner never indicated a lack of understanding of the crimes to which he was pleading guilty. He acknowledged everything contained within the factual basis supporting the plea was true and correct. During Petitioner's rearraignment, the Court asked Petitioner if he recognized the document entitled "Factual Basis" to which Petitioner responded, "Yes, Sir" (Crim. Court File No. 19 at 9). Petitioner stated the factual basis was true and correct (*Id.*). Petitioner also stated there was nothing in the factual basis that was not true insofar as he knew (*Id.*). Petitioner agreed he was pleading guilty because he was in fact guilty of the crimes (*Id.* at 10).

To "possess" a firearm means Petitioner had either actual or constructive possession of the firearm. To establish constructive possession, the Government must prove the defendant had the right to exercise physical control over the firearm, knew he had this right, and he intended to exercise physical control over the firearm at some time. *United States v. Clemis*, 11 F.3d 597, 601 (6th Cir. 1993). Constructive possession also exists when a person has dominion over the premises where the firearm is located. *Id.*

The phrase "in furtherance of" the commission of an offense requires a connection between the defendant, the firearm and the drug trafficking crime so that the firearm facilitated the crime by serving some important function or purpose of the criminal activity. *United States v. Mackay*, 265

10

F. 3d 457, 460-61 (6th Cir. 2001). However, mere possession of a firearm during the course of criminal conduct is not enough to support a finding of guilt under Section 924(c)(1). *Clemis*, 11 F.3d at 601; *United States v. Morrow*, 923 F.2d 427, 434 (6th Cir. 1991). The Government must also prove beyond a reasonable doubt the firearm was present in order to facilitate the drug trafficking crime. *Morrow*, 923 F.2d at 433; *United States v. Brown*, 915 F.2d 219, 224 (6th Cir. 1990).

A firearm is possessed "in furtherance of" a drug trafficking crime if the firearm played an integral role in the drug trafficking crime, such as being intended for use if a contingency arose. *United States v. Henry*, 878 F.2d 937, 943, n.5 (6th Cir. 1989). Some factors used in the determination of whether the firearm is possessed in furtherance of drug trafficking are: whether the firearm was loaded, the type of weapon, the legality of its possession, the type of drug activity conducted, and the time and circumstances under which the firearm was found. *Mackay*, 265 F.3d at 462. If a firearm is available to the defendant for the purpose of protecting him during drug-related activities, or to protect the drugs or to protect money from the sale of drugs, then the firearm is possessed in furtherance of drug trafficking. *Henry*, 878 F.2d at 943-44.

In this case, Petitioner expressly admitted possession of the firearm when he filed his notice of intent to enter a guilty plea and during the change of plea hearing. At sentencing, Petitioner did not seek to withdraw his plea or otherwise challenge his plea to Count Three of the Indictment. The factual basis, stipulated to by Petitioner in open court, stated Petitioner consented to a search of *his* home and, inside *his* home, officers detected a strong chemical odor common to methamphetamine labs. The bathroom was the room which had many of the lab's components, and on a shelf in the bathroom was a loaded, double-barrel pistol.

Petitioner complains Mr. Martinez was ineffective because Mr. Martinez advised Petitioner to plead guilty to Count Three even though the Government could not prove "the requiring elements of the crime" (Court File No. 2 at 9). Assuming Mr. Martinez did in fact advise Petitioner to plead guilty to Count Three, Mr. Martinez was not ineffective for advising his client to plead guilty to a crime where the facts to which Petitioner admitted were adequately supported by the evidence and supported a finding of guilt. At a minimum, Petitioner constructively possessed a loaded pistol which was strategically located so that it was quickly and easily available for Petitioner to use if he needed it.

Petitioner contends the firearm found in the bathroom was not sufficiently linked to the drug activities that took place at his residence for a finding of guilt on Count Three. The gun was found in an area where many components of the methamphetamine lab were located. Officers also found a small quantity of finished methamphetamine in the bathroom. Under the so-called fortress theory, "[w]hen guns and drugs are found together and a defendant has been convicted of possession with intent to distribute, the gun, whether kept for protection from robbery of drug-sale proceeds, or to enforce payment for drugs, may reasonably be considered to be possessed 'in furtherance of' an ongoing drug-trafficking crime." *United States v. Garner*, 338 F.3d 78, 81 (1st Cir. 2003).

Therefore, the Court finds this claim of ineffective assistance of counsel is completely without merit. Mr. Martinez was not deficient in failing to raise this claim, nor was Petitioner prejudiced by its omission. Accordingly, the Court will **DENY** Petitioner's claim for relief on this ground.

## IV.   CONCLUSION

For the above stated reasons, the Court holds Petitioner's conviction and sentencing were not in violation of the Constitution or laws of the United States, and the motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 will be **DENIED**.

The Court must now consider issues which may arise if Petitioner files a notice of appeal. Section 2253(a) requires the district court to evaluate the appealability of its decision denying a § 2255 motion.[3] Section 2255 now incorporates the old habeas procedure of issuing or denying a certificate of probable cause, now renamed a certificate of appealability. No § 2255 petitioner may appeal without this certificate. District judges may issue certificates of appealability under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), which codifies the standard for issuing a certificate of probable cause originally articulated in *Barefoot v. Estelle*, 463 U.S. 880, 893, 103 S. Ct. 3383, 3394, 77 L. Ed. 2d 1090 (1983). *See Lyons v. Ohio Adult Parole Auth.*, 105 F.3d 1063, 1073 (6th Cir. 1997). "A certificate of probable cause requires petitioner to make a 'substantial showing of the denial of [a] federal right.'" *Barefoot*, 463 U.S. at 893, 103 S. Ct. at 3394. *See also* 28 U.S.C. § 2253(c)(2). The standard is perhaps best phrased as follows:

> In requiring a "question of some substance," or a "substantial showing of the denial of [a] federal right," obviously the petitioner need not show that he should prevail on the merits. He has already failed in that endeavor. Rather, he must demonstrate that the issues are debatable among jurists of reason; that a court could resolve the issues [in a different manner]; or that the questions are "adequate to deserve encouragement to proceed further."

---

[3]The Prison Litigation Reform Act of 1995 ("PLRA"), 28 U.S.C. § 1915(a)(3), does not apply to appeals of orders denying § 2255 motions. *Hereford v. United States*, 117 F.3d 949, 951 (6th Cir. 1997); *cf. McGore v. Wrigglesworth*, 114 F.3d 601, 610 (6th Cir. 1997) (instructing courts regarding proper PLRA procedures in prisoner civil-rights cases). Rather, to seek leave to appeal *in forma pauperis* in a § 2255 case, and thereby avoid the $105 filing fee required by 28 U.S.C. §§ 1913 and 1917, the prisoner must seek permission from the district court under Rule 24(a) of the Federal Rules of Appellate Procedure. *Hereford*, 117 F.3d at 952. If the motion is denied, the prisoner may renew the motion in the appellate court.

13

*Gordon v. Willis*, 516 F. Supp. 911, 913 (N.D. Ga. 1980) (quoting *United States ex rel. Jones v. Richmond*, 245 F.2d 234 (2d Cir.), *cert. denied*, 355 U.S. 846, 78 S. Ct. 71, 2 L. Ed. 2d 56 (1957)).

In this case, Petitioner's claims are clearly without merit, and he cannot present a question of some substance about which reasonable jurists could differ. The Court therefore **DENIES** a certificate of appealability.

Fed. R. App. P. 24(a) further requires the district court to certify in writing whether an appeal would be taken in good faith. For the same reasons the Court denies a certificate of appealability, the Court determines any appeal in this case would not be taken in good faith. It is therefore **CERTIFIED**, pursuant to Fed. R. App. P. 24(a), any appeal in this matter by Petitioner is not taken in good faith, and he may not proceed on appeal *in forma pauperis*. *United States v. Atkins*, 171 F. Supp. 2d 769 (W.D. Tenn. 2001). No certificate of appealability will issue as Petitioner has not made a substantial showing of the denial of a constitutional right as required by 28 U.S.C. § 2253(c).

An Order shall enter.

**/s/**
**CURTIS L. COLLIER**
**CHIEF UNITED STATES DISTRICT JUDGE**